UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TARVIS WILSON,

    Plaintiff,

v.                                        Case No. 5:18-cv-267-TKW/MJF

CHADD HARRELL, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

In this section 1983 action, Plaintiff Tarvis Wilson asserts against four correctional officers claims of excessive force, deliberate indifference to a serious medical need, and battery. Defendants have moved for summary judgment on Wilson's excessive force claims and to the extent he seeks compensatory and punitive damages. (Doc. 109). Wilson filed a response in opposition. (Doc. 118). Because there are genuine issues of material fact and Defendants are not entitled to judgment as a matter of law, the undersigned must recommend that Defendants' motion for summary judgment be denied.

### I. BACKGROUND

The following facts are drawn from the evidence in the summary judgment record including Wilson's verified amended complaint, (Doc. 18), and Wilson's sworn

affidavit and response in opposition to the motion for summary judgment. (Doc. 118).[1] When the parties offer conflicting accounts of the events in question, the undersigned "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated as "facts" for purposes of summary judgment review may, therefore, not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

In December 2014, the FDC confined Wilson in a medical self-harm observation status cell ("SHOS cell") at the Apalachee Correctional Institution, which is located in Sneads, Florida. (Doc. 18 at 6). On December 7, 2014, Wilson confronted Defendant Harrell and "other officers" about physically abusing an inmate "Jordan," whom the FDC confined in an adjacent cell. (*Id.* at 6-7 ¶ 6). Harrell threatened to beat Wilson. (*Id.* at 7 ¶ 7). Plaintiff responded to Harrell stating, "that's not right ya'll over there beating that dude up." (*Id.* at ¶ 8). Harrell stated "okay we coming you better be ready" before leaving. (*Id.* at 7 ¶ 9).

At a later unspecified time that day, Defendants Harrell, Brown, Edenfields, and Edwards entered Wilson's cell and commenced beating Wilson's face and body "with

---

[1] A *pro se* plaintiff's complaint, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be treated as testimony by the district court. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018)); *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (internal citations omitted).

closed fists." (Doc. 18 at ¶ 11). Wilson states that after he fell to the ground, Defendants punched and kicked him "more than six (6) times in the face and body." (*Id.* at 7-8 ¶¶ 11-14). Additionally, Wilson contends that Defendant Edwards "jumped on [him] and slammed [his] face into the wall then the floor." (*Id.* at ¶ 14). Wilson alleges that Defendants' beating "bust[ed] Plaintiff's face open and he spew[ed] blood on the floor and walls of" his cell. (*Id.* at 8 ¶ 14).

Wilson contends that as a result of Defendants' actions he had "bleeding of the face, with a few loose teeth, swollen ribs, swollen and bruised legs, migraine headaches that persisted for months, . . . a concussion, trouble breathing, foot swollen, coughing up blood, needed stiches to the face for the gash in my face, [and] chest pains." (*Id.* at ¶ 15).

Wilson also asserts that Defendants denied him a post-use-of-force medical evaluation and medical treatment for the injuries they caused. (*Id.*).

On December 8, 2014, during morning rounds, Wilson reported the beating to Officer Wilkes, who is not a defendant. (Doc. 18 at 9 ¶ 16). Wilson contends that, at that time, he still was covered in blood from the beating he had suffered. (*Id.*). Also on December 8, 2014, Inspector Futch, who also is not a defendant, "came to investigate" Wilson's allegations. (*Id.* at ¶ 17). Wilson asserts that Inspector Futch refused to speak with Wilson until Wilson had taken a shower. (*Id.*). Wilson initially refused to shower because he wanted to be "medically examined" and have "pictures taken" of him. (*Id.*

9 ¶ 18). However, after Inspector Futch and Nurse A. Brown, LPN "threatened the Plaintiff that [Futch] wouldn't interview the Plaintiff or take pictures of the Plaintiff unless the Plaintiff took a shower first," Wilson agreed to shower. (*Id.* at ¶¶ 19-22). Thereafter, an unnamed individual escorted Wilson to the "medical doctor office" where Inspector Futch interviewed Wilson. (*Id.* at 10 ¶ 24). Additionally, Nurse Brown completed an Abrasion/Laceration Protocol and Diagram of Injury (Form DC4-708). (Doc. 109-1 at 4-5).

Wilson initiated this action on December 5, 2018, by filing a complaint under 42 U.S.C. § 1983. (Doc. 1). Wilson is suing Defendants in their individual capacities. Wilson asserts three claims against each Defendant: (1) use of excessive force in violation of the Eighth Amendment; (2) deliberate indifference to a serious medical need in violation of the Eighth Amendment; and (3) battery in violation of Florida law. Wilson seeks compensatory and punitive damages as well as a declaratory judgment. (Doc. 18 at 11, 14). Defendants move for partial summary judgment only on Wilson's excessive force claims and to the extent he seeks compensatory and punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

A. **Excessive Force Claims**

Defendants argue that the District Court should grant summary judgment in their favor on Wilson's excessive force claim because "the record does not support the Plaintiff's allegations that the Defendants attacked him in his cell." (Doc. 109 at 10).

Use of force by prison officials violates the Eighth Amendment's proscription against cruel and unusual punishments when the force is applied maliciously and sadistically for the very purpose of causing harm. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010) (per curiam); *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To survive a motion for summary judgment, a plaintiff must demonstrate that there is a genuine issue of material fact as to the following five elements:

(1) the defendant was acting under color of law;

(2) the defendant used force on the plaintiff;

(3) the force that the defendant used, viewed objectively, was "sufficiently serious" to violate the constitution;

(4) the defendant acted with a sufficiently culpable state of mind, that is, maliciously and sadistically for the very purpose of causing harm to the plaintiff; and

(5) the defendant proximately caused injury to the plaintiff.

*Wilkins*, 559 U.S. at 36-38; *Hudson v. McMillian*, 503 U.S. 1, 4, 7 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Whitley*, 475 U.S. at 320-21; *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020).

Here, Defendants argue that Plaintiff has failed to submit sufficient evidence as to the second element: that they used force on him. Specifically, Defendants contend that the "documented medical records do not support a modicum of the Plaintiff's allegations towards the Defendants." (Doc. 109 at 10). Defendants argue that, because the medical records do not fully support Wilson's assertions, "no reasonable jury will believe" him and "the Court should grant summary judgment in favor of the Defendants." *Id.* In support of their argument, Defendants offer three documents:

### 1. *"Abrasion/Laceration Protocol" Form*

Wilson's "Abrasion/Laceration Protocol" (Form DC4-708) is dated December 8, 2014, and was completed by Nurse A. Brown, LPN. (Doc. 109-1 at 4-5). This documents states that Wilson's chief complaint was "(L) eye bruise" and listed that Wilson complained of "left rib area/left back/left thigh pain." (*Id.* at 4). Nurse Brown described Wilson's eye injury as "black and bruising." Nurse Brown further noted that at the time of her exam, there was no active bleeding, but that Wilson described his pain level as "eight" on a scale of one to ten. (*Id.*). Wilson reported to Nurse Brown that the "Mechanism of Injury" was "altercation with officer," but Nurse Brown also noted that Brown had been striking his head on the door of his cell. (*Id.*). Several

portions of the Abrasion/Laceration Protocol document were incomplete and marked as "unable to assess due to fecal matter all over I/M." (Doc. 109-1 at 4).

### 2. *"Chronological Record of Health Care"*

The FDC's "Chronological Record of Health Care" for Wilson is dated December 6, 2014, through December 8, 2014. (Doc. 109-1 at 6-8). The document spans three pages and includes handwritten notes by A. Wester, RN. Wester recorded that on December 7, 2014, around 10:15 a.m., Wilson began banging his head on his cell door. (*Id.* at 7). At 10:30 a.m., Wilson "continues to bang head on cell door. Small amount of blood noted on window and to (L) side of forehead."[2] (*Id.*). According to the records, Wilson continued similar behavior intermittently throughout December 7, 2014, until 6:30 p.m. when Wilson refused "to submit to hand restraints for ETO administration." (Doc. 109-1 at 8). Nurse Wester's notes do not detail what officers attempted to place Wilson in hand restraints or what transpired during that time. Instead, the entry for 6:45 p.m. states that "Inmate at cell front smearing feces on window. Large amount of urine on cell floor. Dried blood to face with no active bleeding." (*Id.*). The next entry—dated December 8, 2014, at 9:15 a.m.—states that Wilson is "claiming allegation against officer." (*Id.*).

---

[2] In the FDC's Office of the Inspector General Investigation Report, Nurse Wester, in her digitally recorded sworn statement, stated that she "did not see Inmate Wilson bang his head on the cell door." (Doc. 118 at 20).

3.   *Declaration of Kellie Caswell, RN, BSN*

Kellie Caswell is a nurse consultant employed by the FDC. (Doc. 109-1). According to her declaration, Caswell reviewed the "Abrasion/Laceration Protocol" and the "Chronological Record of Health Care" for Wilson. According to Caswell, these records do not support and are inconsistent with Wilson's excessive force claim. (*Id.*)

In sworn materials, Wilson challenges the accuracy of these FDC medical records. (Doc. 118 at 26; Doc. 18 at 8-9). It would be improper for this court to conclude that Wilson's claims were implausible in light of medical records created by the FDC which Wilson alleges under oath are incorrect. *See Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x 910, 916 (11th Cir. 2019) (holding that it was error for the court to rely on medical records to grant summary judgment where the plaintiff testified that the officer in charge did not allow the nurse to fully document plaintiff's injuries, which called into question the contents of the accuracy of the medical records).

Defendants essentially invite the District Court to make a credibility determination and find that the information contained in the FDC medical records is true, accurate, and irrefutable. But federal courts are not authorized to make credibility determinations when adjudicating motions for summary judgment. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge . . . ."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (same).

Wilson has offered sufficient evidence to create a genuine issue of material fact as to the use of force element (and the other elements which Defendants do not directly challenge). Specifically, Wilson submitted four documents:

1. ***Wilson's Verified Amended Complaint***

In this document, Wilson alleges that:

- Defendants Harrell, Brown, Edenfields, and Edwards entered Wilson's cell and beat Plaintiff with their closed fists. (Doc. 18 at 7 ¶ 11).

- After he fell to the ground, Defendants punched and kicked Wilson "more than six (6) times in the face and body." (*Id.* at 7-8 ¶¶ 11-14).

- Edwards "jumped on" Wilson, "slammed" Wilson's face "into the wall," and then on "the floor." (*Id.* at 8 ¶ 14).

- Defendants denied Wilson medical care after they used excessive force. (*Id.* at ¶ 15).

2. ***Wilson's Affidavit***

In this document, Wilson alleges that:

- Defendants "maliciously battered" Wilson by physically striking him "with closed fist at least [3] times a piece an[d] kicked" him. (Doc. 118 at 26 ¶ 3).

- When he was seen by Nurse Brown on December 8, 2014, Brown did not fully document his injuries in the medical records upon which Defendants rely. (*Id.* at 26 ¶¶ 4, 7, 9; *Id.* at 3-5).

- Defendants' actions caused several of his teeth to be "loose, crack, and decay [sic]." (*Id.* at 4-5).[3]

3. ***Wilson's "Inmate Sick-Call Request"***

In this document, Wilson reported to FDC medical staff that on December 7, 2014, he had suffered various injuries.[4] At least some of the symptoms and injuries Wilson reported are consistent with his allegations that Defendants had beaten him on December 7. (Doc. 118 at 15).

4. ***Investigative Report of the FDC Office of the Inspector General***

In this document—which apparently was created by the FDC's Office of Inspector General—the Inspector General reports that it interviewed Derrick Jordan, an FDC Inmate. The report notes that Jordan's statement was digitally recorded. Jordan

---

[3] Wilson also submitted as evidence two signed "Consent for Tooth Removal" documents dated July 1, 2015, and July 20, 2015. (Doc. 118 at 17-18).

[4] "[I]n considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form." *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) (citation omitted). Defendants do not argue that Wilson's sick-call request is inadmissible, but even if it were, the information contained therein could be presented at trial in admissible form. The same is true with respect to the sworn statements of Derrick Jordan summarized in the report of the FDC Office of the Inspector General.

stated to the Inspector General that on December 7, 2014, he observed Defendants Harrell, Brown, and Hatfield, as well as another correctional officer, enter Wilson's cell and attack Wilson. (Doc. 118 at 23).

Because the evidence submitted by Wilson is sufficient to create a genuine issue of material fact, Defendants are not entitled to summary judgment with respect to Wilson's excessive force claim.

**B.    The PLRA Does Not Foreclose Compensatory and Punitive Damages**

Defendants also seek summary judgment on Wilson's claim for compensatory and punitive damages. They argue that Wilson's injuries are *de minimis* and therefore do not qualify for such relief.

The Prisoner Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), was enacted "[i]n an effort to stem the flood of prisoner lawsuits in federal court." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). The PLRA states in part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). Recently, the Eleventh Circuit held that this provision does not preclude an award of punitive damages even when a plaintiff has not suffered a physical injury. *Hoever v. Marks*, 993 F.3d 1353, 1356 (11th Cir. 2021). "Section 1997e(e) does not prohibit all

requests for damages, only those brought 'for mental or emotional injury . . . without a prior showing of physical injury.'" *Id.* at 1358 (quoting 42 U.S.C. § 1997e(e)). Thus, "the text of § 1997e(e) bars only requests for compensatory damages stemming from purely mental or emotional harms." *Id.*

Here, Wilson is not seeking compensatory and punitive damages stemming from purely mental or emotional harms. Rather, he seeks compensatory and punitive damages for Defendants' alleged use of excessive force and their alleged deliberate indifference to Wilson's serious medical needs. Indeed, Wilson submitted evidence indicating that he suffered substantial physical injuries at the hands (and fists) of Defendants. Wilson's verified amended complaint contends that he suffered "bleeding of the face, with a few loose teeth, swollen ribs, swollen and bruised legs, migraine headaches that persisted for months, . . . a concussion, trouble breathing, foot swollen, coughing up blood, needed stiches to the face for the gash in my face, [and] chest pains." (Doc. 18 at 8 ¶ 15).

Additionally, in Wilson's "Inmate Sick-Call Request" dated December 10, 2014, he reported that he had "swollen ribs, my back swollen left side my left femur swollen, my left foot swollen, I'm having trouble breathing and I'm limping. I'm having migraine headaches and my eye is busted and I'm coughing up blood. My whole torso is hurting . . . ." (Doc. 118 at 15). From this evidence, therefore, it is clear

that Wilson is not seeking compensatory and punitive damages stemming from purely mental and emotional injuries.

Section 1997e(e) is an affirmative defense. *See Douglas v. Yates*, 535 F.3d 1316, 1320-21 (11th Cir. 2008). Defendants have the burden of demonstrating the applicability of an affirmative defense and establishing all of its elements. *See Whatley v. Smith*, 802 F.3d 1205, 1209 (11th Cir. 2015); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Defendants have failed to do so here. Defendants, therefore, are not entitled to summary judgment with respect to Wilson's claims for compensatory and punitive damages.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS**:

1. Defendants' motion for summary judgment (Doc. 109) be **DENIED**; and

2. The District Court recommit this case to the undersigned magistrate judge to prepare the case for trial.

At Pensacola, Florida, this 15th day of June, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of this report and recommendation. Any different deadline that may appear on the**

**electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**